# Levy *v.* The State.

*Indictment for Larceny of Bank-Note.*

| 79 | 259 |
|----|-----|
| 104 | 19 |

| 79 | 259 |
|----|-----|
| 117 | 85 |

| 79 | 259 |
|----|-----|
| 129 | 83 |

| 79 | 259 |
|----|-----|
| 187 | 77 |

1. *Description of bank-note in indictment.*—In an indictment for larceny, it is sufficient to describe the the thing stolen as " one five-dollar bill, commonly known and called *greenback,* currency of the United States, of the value of five dollars."

2. *What constitutes larceny.*—If one receives a bank-note, or other money, to be changed, and places it in his pocket, with the fraudulent intent at the time of converting it to his own use, and refuses to deliver it or 'the change on demand, he may be convicted of the larceny of the money so received.

FROM the Circuit Court of Lee.

Tried before the Hon. H. D. CLAYTON.

The defendant in this case was indicted for the larceny of " one five-dollar bill, commonly known and called *greenback,* currency of the United States, of the value of five dollars, the personal property of James M. Ford." He demurred to the indictment, " because it fails to allege the number or denomination of the bill, or that it was to the grand jury unknown;" and his demurrer being overruled, he pleaded not guilty. On the trial, as appears from the bill of exceptions, the prosecutor testified. in substance, that he came into Opelika, on the 20th December, 1884, with a load of fodder for sale, and sold it to one Preston, for $7.20; that Preston paid him a five dollar bill, and the residue in silver; that he then went into defendant's store, and bought two under-shirts, for which he paid $1.50 in silver; that he then asked for a pair of jeans pants, and the defendant showed him a pair, saying that the price was $2.00; that he agreed to take them at that price, and handed defendant the five-dollar bill, "out of which he was to take the price of the pants, and hand him the remainder;" that the defendant wrapped up the pants and handed them to him, and put the five-dollar bill in his pocket-book; that he then asked for the change, and the defendant replied,

[Levy v. The State.]

"There is no change coming to you; you gave me a two-dollar bill," at the same time showing a bill, which he took from his pocket, and which he said was the same one he had received. The prosecutor took the two-dollar bill and the under-shirts, and left the store; but he soon returned, in company with a friend, to whom he had related the facts, and "offered to say no more about it, if defendant would give him the pants, in addition to the two dollars he had received, and, if not, that he would have him arrested;" but the defendant still insisted that he had only received a two-dollar bill, and that he owed nothing. The prosecutor testified, also, that he had no money at that time, except what Preston had paid him; and Preston and one Culpepper, who was present at the time the money was paid, each testified that the bill was a five-dollar note; but no one of the three could describe it, "nor say whether it was a treasury-note, national-bank bill, or silver certificate." The defendant, testifying as a witness for himself, stated that the note which he received was a two-dollar bill.

On this evidence, the court gave the following charges to the jury: (1) "If the jury believe from all the evidence, beyond a reasonable doubt, that the defendant, at the time he received the bill from Ford (if such be the fact), intended to convert it to his own use, and put it in his pocket with that intention, without the consent of Ford, and did so convert it; and that this occurred in said county of Lee, within twelve months before the finding of the indictment; then the defendant is guilty." (2.) "In determining whether the defendant intended to steal the money, it is the duty of the jury to look at all the facts and circumstances in evidence; and if, from all the facts and circumstances in proof, and the legitimate conclusions to be drawn from them, the jury believe, beyond a reasonable doubt, that when the defendant received the money, and put it in his pocket, he did so with the purpose of feloniously taking it—intended to steal it—then he is guilty as charged." (3.) "The fact (if it be a fact) that defendant gave Ford a two-dollar bill, or the fact (if it be a fact) that Ford offered to take the pants and say no more about it, does not excuse the defendant for a wrongful taking of the five-dollar bill, if the original taking was with the intent to convert it to his own use, and against the consent of Ford." (4.) "If the defendant took from the prosecutor a five-dollar bill, commonly called *greenback*, of the value of five dollars, and put it in his pocket, with the intent to convert it to his own use, and without the consent of the prosecutor; and if this occurred in the county, and within twelve months before the finding of the indictment, then the defendant is guilty as charged."

The defendant excepted to each of these charges, and then

[Levy v. The State.]

requested the following charges : (1.) "If the jury believe all the evidence, they can not find the defendant guilty of larceny." (2.) "If a man takes away the goods or property of another openly before him, otherwise than by robbery, this carries with it evidence of a trespass only ; because done openly in the presence of the owner, or of other persons known to the owner, it has not the intent to constitute larceny." . (3.) "If the jury believe, from the evidence, that the prosecutor agreed to purchase of the defendant a pair of pants, at the price of two dollars, and handed him a five-dollar bill, out of which the defendant was to take the price of the pants, and return the remainder to the prosecutor, then the defendant can not be convicted of the larceny of the five-dollar bill." The court refused each of these charges, and the defendant excepted to their refusal.

WM. H. BARNES, for the appellant.—(1.) The indictment does not contain a sufficient description of the ` bill alleged to have been stolen, and the proof is as uncertain and indefinite as the allegations.—*Grant v. The State,* 55 Ala. 201 ; *Wesley v. The State,* 61 Ala. 287. (2.) On the facts proved, there could have been no intent to steal the bill, since the prosecutor was given the pants (and took the two-dollar bill instead), and was only entitled to the change ; and the defendant could, at most, be guilty only of embezzling the change.—*Reg. v. Thomas,* 9 C. & P. 741 ; 39 N. Y. 459 ; *Johnson v. The State,* 73 Ala. 523 ; Bish. Crim. Law, vol. 2 p. 459 ; *B. v. The State,* 58 Ala. 414.

THOS. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The defendant is charged with stealing " one five-dollar bill, commonly known and called *greenback,* currency of the United States, of the value of five dollars." It is insisted that this description of the thing alleged to have been stolen is obnoxious to the charge of uncertainty. The purpose of description is to identify, or individualize the transaction. To make a *prima facie* case, the indictment must show that the thing stolen was the subject of larceny. The certainty required must be such as to inform the defendant of the nature and cause of the accusation against him. The main purposes contemplated are, that he may prepare for his defense, and that the court may, on conviction, be enabled intelligently to pronounce the proper judgment.—*Grattan v. The State,* 71 Ala. 344 ; Code, 1876, § 4784. We judicially know that the paper money, commonly known as and called *greenback,* is a currency issued by or under the authority of the United States, and is so called from the back of the notes being

[Wright v. The State.]

of a green color. The term is more frequently applied to United States treasury-notes issued by the government, but is also sometimes used to designate the national currency, or bank-notes issued under its authority. The description of the bill alleged to have been stolen was, in our judgment, sufficient.— *Sallie v. The State*, 39 Ala. 691; 2 Bish. Cr. Proc. (3d Ed.), §§ 702–703; Whart. Cr. Pl. & Pr. § 189 *a*; *Grant v. The State*, 55 Ala. 201.

When one receives a bank-bill, or other money, to be changed, and places it in his pocket, with the fraudulent purpose at the time of appropriating it to his own use, and he refuses to re-deliver it, or the change, on request, the taking would be felonious, and, according to the better view, the transaction would constitute larceny. The possession of the bill is deemed to be parted with by the owner, only on condition that he is immediately to receive the change for it; the delivery of the bill, and the giving of change in return, being, in legal contemplation, simultaneous acts. This view is supported by *Bailey's case*, 58 Ala. 414, and also by many other well-considered authorities.—2 Bish. Cr. L. (7th Ed.), §§ 812, 817; *Round-tree's case*, 58 Ala. 381; *Hildebrand v. People*, 56 N. Y. 394; s. c., 15 Amer. Rep. 435; *Farrell's case*, 16 Ill. 506; Wharton Cr. Pl. & Pr. (8th Ed.), § 219.

The principle announced in *Johnson's case*, 73 Ala. 523, when properly understood, does not conflict with the foregoing views. There, the openness of the trespass rebutted the *animus furandi* necessary to constitute larceny. Here, the fraudulent conversion, accompanied by secrecy of motive, such as usually characterizes theft, renders the taking felonious.

The rulings of the court, when tested by these principles, appear to us to be free from error; and the judgment must be affirmed.